22-1741. Strap it whenever you're ready. Good morning. Good morning. May it please the court. My name is Blake Abbott and I represent the appellant in this case, Omar Hernandez. Today we respectfully request that this court reverse the district court's dismissal of appellant's complaint. Your Honors, this case involves a student who bargained for and specifically paid for on-campus education for the spring of 2020. As the lower court recognized, the sources that the students relied upon created an expectation that classes would be held on-campus. However, the court then departed from Illinois law in Seventh Circuit precedent and instead ruled in favor of appellee. In doing so, the court heavily relied upon Gossman v. Loyola University, which has since been reversed by this court. Like the district court in Gossman, the district court erred in two separate ways. First, the lower court ignored Illinois law when it came to the contractual relationships between students and universities, failing to recognize that they are implied in fact. And second, the district court ignored the federal pleading standards and Illinois law permitting alternative pleadings for unjust enrichment where a dispute exists between the terms of an implied in fact contract. Mr. Abbott, can I ask you a question regarding damages? Of course, in a breach of contract claim, you have to plead damages. And I've looked at your complaint closely and I see damages pled in Paris 126, 127, 152, and 153 and maybe they're pled in other places. But it seems to me that the damages you plead are educational malpractice. And that the problem you have, especially with the tuition, is the tuition for online is exactly the same as tuition for in-person. So you're saying there's a difference in the fair market value, which strikes me as educational malpractice. Two points on that, Your Honor. First, as this court had previously held in Guzman v. Loyola University, cases such like this do not call into question the professional judgment of educators and they do not ask the court to determine the quality of education being... But then what's the fair market value? That's where I run into a problem because Loyola, there was a striking difference between in-person and online. Right, so in cases such like this, in straight contract economic cases such as this, you can employ experts in order to determine a fair market value between the value of one thing versus another. Can I ask a different question? I mean, it's very much related to what Judge Kirsch is asking. I thought you were saying in this case, which is concededly different from the Guzman case in this respect, that it's actually two different products and if somebody thinks they're buying one product, they didn't want to buy the other product. So if I want to sell you, you want to buy a phone from me and I'm offering iPhones and Android phones and you don't want an Android phone but I insist on giving you an iPhone. They could cost exactly the same amount of money but if you've gotten a product that's not as useful to you, there might be a certain damage associated with that. And that's right, and that's what we are saying in this case. We're saying that we bargained for and paid for on-campus education and we received something different. And it's just a different product, maybe with the same fair market value except maybe not as useful to you for some reason. Maybe you're some kid who has, you know, guidance counselors who've said all these years, you know, that you need in-person learning. Right, and then that would be a question of factual development and further expert analysis in determining what exactly what that difference is. How does that difference, though, not encroach on the educational malpractice? Give me an example where it wouldn't be a claim of educational malpractice. When you get to the differences, you say here are the differences and here's the monetary difference between in-person and online. Well, the reason for that is because we don't call into question the quality of the education. The fair market value can be based on a variety of different sources and that can include things like access to a physical library or access to a physical gym. And there is a dollar amount that can be attributed to that in a fair market analysis. And something else that I would point the court to is the Schaefer versus George Washington case, which this court did rely upon in determining its reversal of the lower court in Goseman, that that consolidated appeal involved another case, American University, where there was the same amount of tuition charged for on campus and online. That court equally held that, no, this does not call into question the educational malpractice doctrine. This is a straight-up breach of contract case. But that's applying a different state's law, too, so I don't know how much weight we can put on that. Oh, I agree with you there, Your Honor, but what... Do the content of those two state laws vary in reality? They're extremely similar in this context, Your Honor, and they both look to whether or not the parties can plead plausibly that there exists an implied-in-fact contract between the parties. And I take it that on this complaint, we are required to proceed on the assumption that for IIT, the online and the in-person are exactly the same amount of money. That's right. But to the point about the implied-in-fact contract and where the court specifically erred, moving away from damages, is that the court looked to specified language, only a single identified promise, rather than applying the implied-in-fact standard. Before we go too far down implied-in-fact, do you agree that under Gosamin, your express contract claims fail? That you have to rely on your implied-in-fact because in Gosamin, the court found they did not allege an express contract. It relied on an implied-in-fact contract. Right. But at the minimum, I would agree with that, that under Gosamin, we would likely not be successful on the express contract. But at the minimum, we have plausibly alleged an implied-in-fact contract. So is there any way you have alleged an express contract here under Gosamin? Well, and let me just say for any part of your case, and you have a fees aspect, you have a tuition aspect, are there any, if you will, subcontracts, like a fee contract expressly promising access to the library or whatever? Is there anything? Well, there is express language in the fees at issue in this case, Your Honor. The two fees are the activity fee and the student services fee. But is there a contract? Apologies, Your Honor. The first one was the activity fee, and the second fee is the student services fee. And there are express descriptions of both of these fees that might satisfy the express contractual. There are descriptions, but I don't see an express contract being alleged anywhere. Because you have descriptions on your implied breach of contract for the fees and the tuition. I don't see anything express. I don't see any allegations that they signed a specific agreement for either any of those fees. Right, but at a minimum, we would have satisfied the implied in fact contract set forth under Gosman. So are you conceding then that in order to have an express contract, there has to be a single piece of paper that has the word contract printed at the top and signature lines at the bottom for both? No, Your Honor, we are not conceding that point. I mean, that's surely not the law in Illinois or any other state I can think of. There can be several different pieces of paper. They can be signed at different times. They can be put together to see what the express contract says. And I completely agree with you on that point, Your Honor. We are not alleging in this case that there is one single fully integrated written contract that incorporates all of the terms. And in fact, the terms of the contracts are put forth by a variety of sources, including the course catalog, the registration materials, the way that IIT specifically distinguishes between the instructional methods that it offers, IIT's pre-pandemic practices. But before we go too far there, do you also agree that in the educational contract under Illinois law, the express contract does need to be not necessarily one piece of paper, but there has to be an underlying contract separate apart from your applied contract? If I'm understanding your question correctly, I think yes. I think that under Illinois law for an express contract. In the educational context. Is there a separate rule in Illinois? Are you conceding that the Illinois law of contract has an educational subsection, and a construction subsection, and a services subsection, and all sorts of others? Your Honor, the only thing that I'm saying, as far as Illinois law goes, is that it applies to educational settings. And it's conceded here that that's a contractual relationship, that the courts of Illinois have so characterized it. And the terms of that contract come from a variety of sources. But in addition to various writings that can come together to form an express contract under Illinois law, an express contract can also be put forth by verbal manifestations made to somebody else as well. And so I think that what's important here is to recognize that at a minimum, we do satisfy the implied in fact contract standard in Illinois. And what's important is when we look at the full picture, when we look at all the manifestations, the course of dealings, whether or not there is a reasonable inference of in-person education. And here, in pursuant to Gosamin, the answer to that is yes. In Apelli's brief, they try to point to a couple of different ways that they might possibly be able to defeat such an inference of in-person education. And that comes by way of disclaimer. Gosamin looked at a similar generic disclaimer and found that just a reservation of right to change curriculum was not enough to defeat the reasonable inference for in-person education. Here, the disclaimer that Apelli relies upon is even more vague. It simply says, we reserve the right to change our curriculum. And that disclaimer would not be enough to defeat a reasonable inference of on-campus education. Defendant also relies upon other tuition refund policies that the school employs that contemplate a scenario in which a student withdraws from a university. Obviously, such tuition refund reimbursement schedules would not be applicable to a situation where, as here, the students did not withdraw from the university. They actually continued. And it does not contemplate a scenario in which the university actually breached the contract for in-person education. And moving to the unjust enrichment claims, which were also dismissed in this case. Didn't you plead yourself out of court on those, though? Your unjust enrichment claims do seem to rely quite heavily on things that you're also saying are a contract. That's right, Your Honor. But similar to Gosamin, the pleading errors that we made in this case were inadvertent. And any opportunity to amend those would not be futile. We should be permitted the opportunity to correct our pleadings consistent with the decision in Gosamin so that we can alternatively plead properly the unjust enrichment claims. There is a similar set of circumstances. And Illinois law does seem clear that you can't incorporate express contractual language into your unjust enrichment claim. However, they can exist when the terms of a contract are in dispute. And pursuant to Gosamin, just the discrepancy between our interpretation and our allegations of an in-person contract and Appelli's argument that they did not promise one, that alone is enough to permit appellants to plead in the alternative unjust enrichment. Do you agree, though, you'd have to have leave to amend your pleadings to satisfy the unjust enrichment pleading requirements in light of the fact that in your complaint you did incorporate all of your contract allegations into that claim? I would agree with that. And that would be consistent with Illinois law. And we respectfully request that this court permit us the opportunity to do so upon reversal. You are into your rebuttal time, if you want to say anything. Oh, of course. I apologize. It's up to you. It's my time for rebuttal. Thank you. Thank you. Morning, Mr. Eveland. Good morning, Your Honors, Counsel, and may it please the court. My name is Toby Eveland. And I, along with my colleagues at Saul Ewing, Arnstein, and Lehrer represent Illinois Institute of Technology. This court should affirm the district court's dismissal because the contract between plaintiff and IIT simply doesn't say what plaintiff wishes it did. And this court's decision in Goseman doesn't say plaintiff's claims. So would you mind focusing on that second point first for me? Because although I can see the pricing difference between Goseman and this case, I'm not convinced that giving somebody, as it were, an iPhone when they asked for a Droid phone, even if they were the same price, is not a breach of contract. Maybe all the rest of your equipment is Apple-oriented or something, or not. And so why doesn't Goseman decide this case? Sure, Your Honor. I actually think there's seven key reasons why Goseman doesn't decide this case. And I think the first one is, in fact, the pricing. In Goseman, on-campus instruction was priced at almost three times the amount of online instruction. But that's not the case here. In fact, as plaintiff concedes before this court and has made very clear in the bulletin and course catalog and handbook, is that IIT charges the same amount for all instruction. In other words, plaintiff knew this when he enrolled in IIT like every other student. But why doesn't this position? You're not leaving room for reliance on the form of education. And I would say, just off the top of my head, that professional educators do recognize quite a difference. And we learned a lot during the COVID pandemic about the effectiveness of online versus the effectiveness of in-person. They are, in effect, different products. And if somebody thought they were buying one product, what gives you the right to switch and give them a different product? Well, I think a couple things, Your Honor. First, the contract between IIT and plaintiff was simple. It was a contract to provide education and access to intellectual capital. You pay tuition. In exchange for that, you attend classes. You achieve passing grades. You earn hourly credits. And when you earn enough hourly credits, a degree is conferred upon you. But isn't it a question of law? I mean, you've described a possible contract here. That's not the contract that was identified in Gossam. And there were more terms to it, that the education we're giving you is going to be face-to-face, in-person education. You're going to have access to labs. You're going to have access to the library. You're going to have access to the sports facilities, whatever. Maybe you're a PE major, and you need to have activities. So why isn't it a question of law at this very early stage of the litigation for the court to say, well, you've alleged all of this. And now let's let the case move on and see if it'll hold up. And that's actually what the district court did. And the district court determined that plaintiff's case doesn't hold up. I actually think a key difference here between Gossam and the case before your honors is that in Gossam, there was actually a question as to what did the documents even provide. And respectfully, IIT contends that plaintiff just mischaracterized the court's decision in Gossam. Gossam didn't say that a reservation of rights or a disclaimer was improper. In fact, it was a key question as to whether or not the reservation of rights at issue in Gossam was even present in the spring 2020 documents. Here, there's no dispute. And in fact, the district court recognized that the parties agreed up front what are the documents to form the contract between them. So how far does this reservation of rights go? Suppose somebody signs up for the fall semester of 2022 at IIT. And IIT announces the day before classes start that it's eliminating all of its foreign language departments. And the person was a foreign language major. Are they stuck with still going? Is that contract being abided by? No, your honor. In fact, if you look at the tuition refund policies, which IIT also cites, there are certain circumstances where a student would, in fact, be entitled to a tuition refund. But this isn't the students doing. This is IIT just suddenly and randomly eliminating a significant part of its program. And if you're going to say it's an extraordinary circumstance, then why isn't the same thing true here? Why isn't the need to have in person an extraordinary circumstance? Your honor, I don't think it's an extraordinary circumstance. So you can get rid of the French department and the Spanish department and all the rest of them at will. No, your honor. And in fact, I think that's a key distinction from your question is IIT didn't get rid of anything. But you're saying that its reservation of rights gave it the discretion to make any changes it wanted to in the product that it was offering its admitted students. Correct, your honor. And that means they can get rid of all the foreign language departments. They can throw away the science departments. They can make any change they want. No, your honor. And respectfully, I would disagree with that because I think the disclaimer has to be read in conjunction with their tuition refund policies. And the tuition refund policies do contemplate circumstances or hypotheticals like your honor just raised. But why is the location? What language are you particularly pointing to in the tuition refund policy? In the tuition reimbursement policies, your honor. I think there's, we cited in our brief, there's section 12.10 of the student handbook. But that focuses on when a student drops a course, not when IIT takes an action. Well, I actually think, your honor, if you look at under section 12.11, it says under other exceptional circumstances such as withdrawal for military service, serious illness, or action by the university, consideration may be given to a prorated refund or credit for unused tuition upon written request to the institution. And why does that preclude exactly what the plaintiffs are looking for here? They're saying there was action by the university that triggers our right to prorated refunds. They're not asking for every nickel back that they ever paid. They understand that they received something. They just didn't receive what they bargained for. Well, I actually think their request for the damages, your honor, that you just referenced is actually what pleads them out of court. Because I think for the damages that they asked this court to provide them, it actually does, in fact, go to the heart of the educational malpractice doctrine. And I'm not sure it does, because I don't think you have to look at the content of the program. You just have to look at its structure and realize that it's different. It's a different product from the one you thought you were buying. But I don't think that's any different, your honor, than, for instance, if you had a professor who started teaching the course, and at the same point in which classes transitioned online, the professor became a parent and took maternity or paternity leave, and the university brought in a different professor to finish the semester. That's certainly an educational choice, to have a different professor. But I don't see where saying, we're going to give you a chemistry class that includes lab time is the same as a chemistry class that doesn't include lab time. They're just different products. Except for, as the plaintiff admits before this court, IIT has routinely offered both options to its students. That is the promise. But not without strings. It has not actually just said, take it in whatever format you want. I think, your honor, in fact, as the plaintiffs argued, the court table. People need permission, right, for the online. It's a cumbersome process. I don't think the plaintiffs allege that it's a cumbersome process. And I think, rather, it's informative. Just as though the course catalog says, you can take Calculus 101. And then once you register for that, you can choose, I want the traditional method of instruction or I want the online method of instruction. But what about the allegations that the plaintiff has included that IIT considers the online versus in-person different? They've included allegations in their complaint that the policies specifically prohibit traditional students from registering for online classes absent approval and some additional allegations suggesting that you or your client considers them different, even though the price is the same. Your honor, respectfully, I think that's a mischaracterization of the documents that are attached. And as we know, where the allegations differ from the documents, including the handbook, the bulletin, and the course catalog. I also want to touch on something else, your honor. I think one of the key differences is, in fact, here we do have an express contract. And the parties don't dispute what comprises that contract. And I think that takes this different from Gosamin. What is the express contract? The express contract is the catalog, the bulletin, and the handbook. That's what Gosamin said could not be an express contract. But it was an implied in fact contract. Well, and I wonder, your honor, if one of the reasons why Gosamin, in fact, went that way is because there was a dispute between the parties as what did the documents actually say. But you've already shown a dispute between what these documents yield. Because your opponents are saying that the catalogs and the bulletins and all the rest of it include the promise to provide in-person learning experiences, in-person context for the education. You described the actual contract in much more limited terms, just more basic terms. But the content of the, it seems to me there's a dispute between you and your opponent about what exactly makes it into the so-called express contract. It strikes me that implied in fact may be a better match in terms of doctrine for what's going on here. And the only distinction in Gosamin was when did the disclaimer language go in. There wasn't a dispute about what the handbook and the registration said. It was only about when that disclaimer language went in. Well, and I think one of the other distinctions here is, in fact, as the district court noted, first off, as it pertains to the implied in fact contract, plaintiff waived that argument in the district court. In fact, in responding to IIT's motion to dismiss, plaintiff did not actually address the arguments for why an implied contract would not exist here. Even without the waiver, the district court went on to say, please show me where there's a specific promise for in-person instruction in anything you've cited. And I think that is different. But you don't need an explicit promise if you're dealing with an implied in fact contract. I'm a little worried that your argument is saying the only time you have an implied in fact contract is when you would satisfy the criteria for an express contract anyway. They are different under Illinois law. They are, in fact, different. But as I think as the dissent points out in Gosamin, in the educational context, you've only had implied contracts. But where are the citations for that? The dissent agreed. She's sitting right here. And that was a dissent. I may agree with you, but that was a dissent. So Gosamin, the majority opinion is the law. It hadn't been crystallized, I'll just say, into a decision. Anyway, you get the point. I'm a little surprised, though, back to your comment before, I'm a little surprised to hear you say there was an express contract here. I do think there is an express contract, Your Honor. I think that's actually what the district court said and what plaintiffs said before the district court. There was no dispute between the parties. Where does the district court say that? The district court says the relationship is contractual. That's fine. But then there are different ways of showing a contract. The district court actually cited to 26 different paragraphs, Your Honors, as to where the plaintiff specifically alleges and doesn't dispute that there is an express contract. Can you give me a page? I just didn't see it that way. I think he's saying this is the content that factors into the contractual relationship. I'm sorry, I don't have the specific page of the district court's opinion. I do have the paragraphs that the district court cited from the second amended complaint. It's different than to say that plaintiffs alleged an express contract versus the district court holding that there was an express contract. I agree the plaintiffs attempted to allege an express contract, but the district court certainly didn't find an express contract. Again, back to the educational setting, the Illinois law is different for contracts.  The Seventh Circuit's decision in Gosamin can still remain undisturbed. I think there were seven different key facts there as we highlighted in our SIR reply brief that the court granted us leave to file to address Gosamin. But I think there's a couple of other things here. In Gosamin, there was the undisputed fact that the university there had actually reimbursed certain fees, and there's no allegation here because those fees are charged across the board. Are the activity fee and student services fee charged to online students? Yes. In the same amount to which they're charged for tuition students? Yes. Also, in Gosamin, you had the plaintiff be able to point to 3,200 times where the university said in-person education, in-person education. And again, that wasn't— Well, they didn't count it up maybe in the same way, but I read this complaint as alleging many times where the face-to-face— I don't know what face-to-face means. If it doesn't mean in person, surely it doesn't mean you're staring at somebody in the Zoom. I would respectfully disagree, Your Honor. And I think that's one of the ways in which IIT perhaps was ahead of its times or ahead of its peers because it was offering this method of instruction up front both ways. What about residency requirements? You have to be here for two years. And as the policies also say, you can have those waived. But it was a basic requirement. It meant that the default was— for a waiver, you were subject to that rule. That is correct. I think the problem with plaintiff's argument is this. Aside from the fact that the facts here are different than Gooseman, plaintiffs asked this court to ignore the clear language of the tuition refund policies. Plaintiff asked this court to ignore the disclaimer policies. But then plaintiff asked this court to somewhere find clear language promising them a full semester of in-person classes uninterrupted even though no such language exists. And the district court undertook the process of searching every document that was cited by plaintiff. And IIT said up front, we don't dispute that those are the documents that form the contractual relationship. They just don't say what plaintiff wishes they did. This court should affirm. Thank you, Your Honor. Thank you, Mr. Evelyn. Mr. Abbott? May it please the court, just a few points on rebuttal. First, I would just like to speak directly to the disclaimer that's sort of been discussed today. First, it wasn't just that whether or not where the disclaimer went in in Gooseman that made the plaintiff's claims for implied contract still viable. Rather, the court even entertained the possibility of its existence. And even in that circumstance, they said just a generic reservation such as that could not defeat a reasonable inference for in-person education. And we can compare it with the disclaimer that exists today. And they simply say something even more generic than the one that existed in Gooseman. And as other courts have found, absent specific languages, you cannot defeat that reasonable inference of in-person education. Next to the mandatory fees, I wanted to speak to that just a little bit. As Your Honor has brought up the point that they charge the same fees to online students as they do to on-campus students. But the difference here is that those students who are enrolled in the online classes, the fees that they pay, they would still have access to them, although their education was taking place on campus. Sorry, excuse me, online. But here, the campus was completely shut down during March of 2020. So regardless, the students still didn't have access for the on-campus services that those fees went to. And I think that a very, very telling point of this case right now is what IIT wished its reservation of rights says and what it actually says during the 2019-2020 school year. As it exists today, the disclaimer expressly states that, in all bold, that they can clearly reserve the right to change their mode of instruction at any time, whenever they want to, for either permanently or for an unidentified period, regardless of where the methods and means of location instruction is delivered. That language did not exist in 2020. I think a lot of universities have added that. I think so too, Your Honor. And I think that those rare universities that had that language existing at the time prior to COVID-19, such a term might be able to defeat that reasonable inference of in-person education, but such a disclaimer did not exist here. And we respectfully request that this court reverse the district court's decision and reinstate appellant's complaint. Thank you. Thank you, Mr. Abbott. The case will be taken under advisement.